1
2
3
4                      UNITED STATES DISTRICT COURT

5                     NORTHERN DISTRICT OF CALIFORNIA

6

7    JOHN DOE I, et al.,                    Case No.  13-cv-03027-JCS

                    Plaintiffs,

8
            v.                              **ORDER RE CROSS-MOTIONS FOR**
9                                           **SUMMARY JUDGMENT**

10   BUTLER AMUSEMENTS, INC.,               Re: Dkt. Nos. 59, 60

                    Defendant.
11

12

13   **I.      INTRODUCTION**

14          Plaintiffs in this action (John Doe I and John Doe II) worked for Defendant Butler

15   Amusements, Inc. as carnival guest workers under the Department of Labor's H-2B Temporary

16   Work Visa Program.  They assert wage and hour claims under the Fair Labor Standards Act of

17   1938 ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, and under California state law.  Before the Court are

18   cross-motions for summary judgment addressing whether Defendant is exempt from federal and/or

19   state law wage and hour requirements.   A hearing on the motions was held on Friday, September

20   19, 2014 at 2:00 pm.   The parties submitted supplemental briefs following the hearing.  For the

21   reasons stated below, the motions are GRANTED in part and DENIED in part.[1]

22

23

24

25

26

27

28   _____

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.     BACKGROUND

### A.    Facts[2]

#### 1. Defendant's Operations

Defendant Butler Amusements, Inc. owns and operates a traveling carnival, typically operating at 135-140 distinct locations in Arizona, California, Idaho, Nevada, Oregon, and Washington State during its season.  Joint Statement of Undisputed Material Facts ("JSUMF"), Nos. 17-18 (citing Butler Amusements, Inc.'s Motion for Partial Summary Judgment ("Defendant's Motion"), Ex. 1 (Affidavit of Mick Brajevich) ("Brajevich Motion Decl.,"), ¶¶ 4, 6).  Defendant does not own these locations; rather, it enters into contracts with the landowner (often a fairground) or sponsor.  Brajevich Motion Decl., ¶ 22.  Under these contracts, Defendant is given the exclusive use of a designated parcel of land to set up and operate its carnival for the duration of its event.  JSUMF, No. 27 (citing Brajevich Motion Decl., ¶ 23).  These parcels are always unoccupied, grass-covered fields, gravel lots, or parking lots.  Id.  Other than the parking support provided by the parking lots, each of these properties has no independent or sustained business operation.  Id.  Further, nearly all of the locations are separated by many miles, and in some cases, hundreds of miles.  Id., No. 23 (citing Brajevich Motion Decl., ¶ 12).

Defendant sets up its carnival equipment on each designated parcel without instruction from the landowner or sponsor as to how the carnival should be laid out.  Id., No. 27.  Typically, a carnival will have one to three entrances or gates where patrons may enter.  Id., No. 28 (citing Brajevich Motion Decl., ¶ 24).  Once inside, the patron may wander freely throughout the midway, which is a common area bounded externally on all sides by carnival equipment.  Id.  Using fencing and the arrangement of equipment, Defendant separates the carnival from the surrounding area, making it difficult for the public to enter or leave the carnival except through the designated entrances.  Id., No. 29 (citing Brajevich Motion Decl., ¶ 25).  At its carnivals, Defendant provides rides (ranging from a single ride to about 65 rides at its largest carnivals), amusement games and food operations.  Id., Nos. 24-25 (citing Brajevich Motion Decl., ¶¶ 15-17).

---

[2] Unless otherwise noted, the Court relies on facts that it finds to be undisputed based on either the stipulation of the parties or the Court's own review of the record.

United States District Court
Northern District of California

1   At the conclusion of each carnival, Defendant tears down its equipment and moves on to the next

2   location.  *Id*., No. 22 (citing Brajevich Motion Decl., ¶ 11).  In Defendant's business, setting up

3   and tearing down carnival rides and equipment is a normal, expected, and characteristic function

4   of amusement ride operators and attendants.  *Id*., No. 31 (citing Brajevich Motion Decl., ¶ 36).

5       The average length of operation at any particular location is about 9-10 days.  *Id*.,  Nos. 19-

6   20 (citing Brajevich Motion Decl., ¶¶ 7-8).   In 2008-2010, the longest event was a 6-week

7   Christmas event; there were also two events that ran 17 days.  *Id*., No. 21 (citing Brajevich Motion

8   Decl., ¶ 9).  Defendant does not dispute, however, that it has operated at multiple, distinct

9   locations for more than seven months out of each calendar year in all relevant years.  Declaration

10  of Jessica Stender in Support of Plaintiff's Memorandum of Points and Authorities in Opposition

11  to Defendant's Motion for Partial Summary Judgment ("Stender Opposition Decl."), Ex. J

12  (Defendant's Interrogatory Responses) No. 8 ("[d]efendant admits that the beginning of its

13  operation seasons from 2003 through 2010 until the end of each such operating season was greater

14  than 7 months").

15      Apart from the temporary locations where Defendant's carnivals are held, Defendant

16  maintains several permanent locations.  *See* Butler Amusements, Inc.'s Opposition to Motion for

17  Partial Summary Judgment ("Defendant's Opposition"), Ex. 1 (Affidavit of Mick Brajevich)

18  ("Brajevich Opposition Decl.,"), ¶ 3.  Defendant operates an administrative office in Beaverton,

19  Oregon.  JSUF, No. 13.  The Beaverton address is listed in the California Secretary of State

20  Business Information as the address for Butler Amusements, Inc.  Stender Opposition Decl., Ex.

21  K.  It was also the address used by Defendant for its 2010 corporation federal income tax return.

22  *See* Declaration of Fernando Flores in Support of Plaintiff's Reply to Defendant's Opposition of

23  Plaintiff's Motion for Partial Summary Judgment ("Flores Reply Decl."), Ex. B.  According to

24  Defendant, "[a]ccounting for certain financial commitments is handled through the administrative

25  office in Beaverton, Oregon . . . [including] purchase payments for certain equipment or paying

26  certain bills, such as workers' compensation."  Brajevich Opposition Decl., ¶ 3.  However, the

27  Beaverton office does not handle payroll or paychecks, according to Defendant.  *Id*.  It is

28  undisputed that Plaintiffs never performed any work in the Beaverton location and that no

3

1    amusement activities were conducted there.  Defendant also maintains a permanent office in

2    Fairfield, California that handles bookings, promotions and contracts, and a maintenance yard in

3    Santa Nella, California where certain maintenance and trucking functions are handled.  *Id.*, ¶ 3.

4    Butler Amusements, Inc. is registered as a California corporation.  Stender Opposition Decl., Ex.

5    K.

6         Butler also maintains between one and six units for handling the operations of the

7    carnivals, each with a mobile unit office.  Brajevich Opposition Decl., ¶ 4.  According to

8    Defendant, each unit office is the "central operations for the unit" and "controls the employees

9    assigned to that unit."  *Id.*, ¶ 5.  The unit office "is responsible for approximately 90% of that

10   unit's bills" and is responsible for "that unit's payroll and paying workers."  *Id.*  Thus, the

11   Plaintiffs in this action were assigned to "individual worksites for an individual unit as soon as

12   they arrived in the country" and were "always paid through the individual office of the unit to

13   which they were assigned."  *Id.*, ¶ 6.  Neither Plaintiff was ever assigned to or based in the

14   Beaverton, Oregon office.  *Id.*, ¶ 7.

15        According to Defendant, its revenues for amusement rides are "collected and accounted by

16   selling tickets at ticket booths."  Brajevich Motion Decl., ¶ 16.  Revenue generated by amusement

17   games and food operations is also collected and accounted at each point of sale.  *Id.*, ¶ 18.

18   Defendant's tax and accounting records are maintained by an outside accountant, Steve Nittler,

19   who has standing requests for supporting documentation of revenues and who also issues "special

20   requests for documentation as needed."  *Id.*, ¶ 21;  Defendant's Motion, Ex. 2 (Affidavit of Steve

21   Nittler) ("Nittler Motion Decl.").  Nittler has reviewed Defendant's corporate tax and accounting

22   records and prepared a chart "identifying each of Defendant's events throughout 2008-2009, the

23   dates of those events, and the revenue from rides, games, food, and the total revenue for each

24   location."  Nittler Motion Decl., ¶ 6.  A summary of that chart is offered by Defendant in support

25   of its summary judgment motion.  *See* Defendant's Motion, Ex. 3 (Evidence Summary of Gross

26   Revenue Receipts).  Using the method that Nittler understood is used to determine whether the

27   FLSA's amusement exemption applies, Nittler calculated the ratios of Defendant's receipts for

28   2008 and 2009 as 24.67% and 22.1% respectively.  *Id.*  Nittler states that he calculated the ratios

4

1    using the following method:

2            When events crossed between months, I used customary practice to
3            allocate the revenue proportionally based upon the number of days
             of operation in each month. The various revenue figures for rides,
4            games, food, and all sources were then cumulated for the 6 months
             with the lowest revenue and the 6 months with the highest revenue.
5            These 6-month figures were then averaged, and the averages were
             converted into a ratio.

6    *Id.*

7            In a supplemental declaration, Nittler explained that because all revenue is received only

8    during the course of individual events, under the circumstances here the terms "revenue" and

9    "receipts" are interchangeable.  Butler Amusements, Inc.'s Reply Supporting its Motion for Partial

10   Summary Judgment ("Defendant's Reply"), Ex. 1 (Affidavit of Steve Nittler) ("Nittler Reply

11   Decl."), ¶ 5. He also explained that he allocated revenue proportionally based on the number of

12   days of each event because revenue for each event was reported only as an aggregate total and not

13   on a day-by-day basis.  *Id.*, ¶ 6.  According to Nittler, his use of this allocation practice was not

14   done in order to allocate money that was received before or after a particular event to those days.

15   *Id.*  Finally, Nittler states that he performed calculations to "double-check" his proportional

16   allocation policy "using day-by-day figures (when that data was available) for the 2 highest and 2

17   lowest revenue (or receipts) months for 2008-2009."  *Id.*  According to Nittler, using this sampling

18   methodology, he determined that the calculation deviated by only .2% from his earlier calculation

19   and therefore, the ratios he calculated are still within the statutory 33⅓% guideline.  *Id.*, ¶ 7.

20              **2.   Plaintiffs' Employment with Defendant**

21           Defendant employed John Doe I for parts of each year in the years 2003 through 2010 on

22   H-2B visas.  JSUMF, No. 1 (citing Declaration of Jessica Stender in Support of Plaintiffs' Motion

23   for Partial Summary Judgment ("Stender Motion Decl."), Ex. A (Butler Amusements, Inc.'s

24   Answers to Request for Admissions, Set One)).  Defendant employed John Doe II for parts of

25   each year in the years 2004 through 2010 on H-2B visas.  *Id.*, No. 2 (citing Stender Motion Decl.,

26   Ex. A).  The H-2B visa program is a means by which U.S. employers unable to find ready,

27   willing, and able U.S. workers can legally hire foreign labor at prevailing wages to satisfy the

28   employer's labor force needs.  *Id.*, No. 37 (citing Brajevich Motion Decl., ¶ 49).  Plaintiffs were at

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1   all pertinent times, domiciled in and residents of Mexico.  *Id*., No. 33 (citing Brajevich Motion

2   Decl., ¶ 33).

3        In the applications submitted to the Department of Labor for approval to hire for Plaintiffs'

4   positions under the H-2B visa program, Defendant listed the position held by Plaintiffs as

5   "Amusement and Recreation Attendant" with Occupation Code 39-3091.  *See* Stender Motion

6   Decl., Exs. B-D (applications for 2008-2010).  The Occupation Code is a reference to the

7   Occupational Employment Statistics ("OES") program of the federal Bureau of Labor Statistics.

8   *See* Brajevich Motion Decl., ¶¶ 37-38 & Ex. 4 (listing approved job tasks for Amusement and

9   Recreation Attendants, listing 39-3091.00).  A "[s]ample of reported job titles for this occupation"

10  lists the following jobs:  "Ski Lift Operator, Ride Operator, Recreation Attendant, Service

11  Representative, Golf Starter and Ranger, Recreation Aide, Recreation Leader, Sports Complex

12  Attendant, Activities Attendant, Community Center Coordinator."  Defendant's Motion, Ex. 4.

13  On the applications for 2008 and 2009, Defendant described the job to be performed as follows:

14  "Job involves a variety of attending duties, operating and maintaining amusement rides and

15  concessions. Some set-up and takedown is required."  Stender Motion Decl., Exs. B, D. The 2010

16  application describes the job as follows:

17        Perform variety of attending duties at amusement or recreational
          facility.  May schedule use of recreation facilities, maintain and
18        provide equipment to participants of sporting events or recreational
          pursuits, or operate amusement concessions and rides.
19

20  Stender Motion Decl., Ex. C.  On the 2008 Application, Defendant states under the "Other Special

21  Requirements" section of the form "MUST BE ABLE TO TRAVEL."  *Id*., Ex. D.  Similarly, the

22  2009 form lists as a special requirement of the job "Must travel with the show."  *Id*., Ex. B.

23        In the applications, Defendant listed an hourly wage rate based on the "prevailing wage,"

24  which was at or above the minimum wage, and promised to pay overtime pay.  JSUF, Nos. 6-7

25  (citing Stender Opposition Decl., Exs. B-D).  In particular, for 2008, the basic pay rate was listed

26  as $8.00/hour and the overtime rate was listed as $12.00 per hour.  Stender Motion Decl., Ex. D.

27  For 2009, Defendant listed a basic wage rate of $8.41 per hour and an overtime pay rate of

28  $12.62/hour.  Stender Motion Decl., Ex. B.  The number of hours per week for the positions was

stated to be 36 hours at the basic rate for both 2008 and 2009, with 0 hours of overtime.  Stender Motion Decl., Exs. B, D.  In a letter of clarification submitted to the Department of Labor in support of the 2009 application, CEO Earl Butler wrote, "[t]he hours listed as 36 . . . have been sufficient in the past in the relation to this job position for these Carnival Laborers.  We do not expect any Overtime to be required from these aliens . . ,.  [h]owever we are fully aware if the hours do exceed the 40 hr. basic the overtime rate . . . would be applicable."  Stender Opposition Decl., Ex. A.  For 2010, Defendant stated that the rate of pay was a flat weekly rate of $340 for 40 hours of work.  Stender Motion Decl., Ex. C.  Classified advertisements placed by Defendant in various newspapers also promised to pay a wage that was at or above the state and federal minimum wage, as well as overtime pay.  JSUMF, No. 7 (citing Stender Opposition Decl., Ex. E).

According to Defendant, in 2009 and 2010, Plaintiffs worked for Defendant as "full-time carnival ride operators."  Brajevich Motion Decl., ¶¶ 40-41.  Plaintiffs present evidence, however, that they received training not only in operating rides but also in maintaining them and setting up and dismantling the rides.  Stender Opposition Decl., Ex. G.  They also offer the declaration of John Doe II stating that he spent a portion of the year at the Santa Nella maintenance yard performing "specialized maintenance work, including repainting Butler's rides and fixing broken ones."  *Id.*, Ex. H (Doe II Decl.), ¶ 7.

Plaintiff Doe II states in his declaration that he consistently worked more than 40 hours/week at a flat rate and never received overtime pay.  *Id.*, Ex. H (Doe II Decl.) ¶ 8; *see also* Complaint, ¶¶ 44, 46 (alleging that Plaintiffs "generally worked between ten and fourteen hours a day, six or seven days per week" and "often worked between seventy (70) to eighty (80) hours in a week").

It is undisputed that after 2010, Defendant stopped recruiting Plaintiffs and did not rehire them after 2010.  Complaint, ¶ 54.

**B.    The Complaint**

In their complaint, Plaintiffs assert the following claims:

Claim One:  Failure to pay minimum wages in violation of the FLSA, 29 U.S.C. §§ 206(a)(1)(C) and 218(a).

Claim Two: Failure to pay overtime wages in violation of the FLSA, 29 U.S.C. § 207(a)(2)(C).

Claim Three:  Unlawful deduction from wages for visa, recruitment and transportation fees in violation of the FLSA, 29 U.S.C. § 203(b), 29 C.F.R. §531.32 (c) and 29 C.F.R. § 655.22(g)(2).

Claim Four:  Failure to pay minimum wages in violation of California Labor Code and IWC Wage Orders.

Claim Five:  Failure to pay overtime and double time wages in violation of California Labor Code and IWC Orders.

Claim Six: Unauthorized deductions from wages and failure to reimburse for business expenses in violation of California Labor Code and IWC Orders.

Claim Seven:  Breach of California contract law.

Claim Eight:  Waiting time penalties under California Labor Code.

Claim Nine:  Unfair business practice in violation of California Business and Profession Code.

## C.    The Motions

The parties' motions address two main issues:  1) is Defendant exempt as to Plaintiffs' FLSA claims (Claims 1-3) under the amusement exemption found in 29 U.S.C. § 213(a)(3); and 2) is Defendant exempt as to Plaintiffs' California state law wage and hour claims (Claims 4-6 and 8) under the carnival-ride operator exemption  in Cal. Code Regs. tit. 8, § 11100, ¶ 1(F).[3]  Plaintiffs ask the Court to hold, as a matter of law, that neither exemption applies, while Defendant asks the Court to hold that they apply.

---

[3] Plaintiffs did not request summary judgment on Claims 6 and 8 in their motion because they were unaware that Defendant was asserting its exemption defense as to these claims until Defendant filed its summary judgment motion.  In their opposition brief, however, Plaintiffs contend that there are no genuine issues of material fact as to these claims and  therefore, like the other state law wage and hour claims, they are entitled to summary judgment as a matter of law on these claims.

**III.    ANALYSIS**

    **A.    Legal Standard under Rule 56**

      Summary judgment on a claim or defense is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Id*.  On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

    **B.    Exemptions**

      Under both the FLSA and California wage and hour laws, it is Defendant's burden to show that an exemption is applicable.  *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983) (FLSA);  *Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal.4th 319, 338 (2004).  Further, exemptions under both federal and state law are narrowly construed.  *A.H. Phillips v. Walling*, 324 U.S. 490, 493 (1945) (holding that exemptions under the FLSA must be "narrowly construed" and noting that "[t]o extend an exemption to other than those plainly and unmistakable within its terms and spirit is to abuse the interpretive process and to frustrate the announced will of the people"); *Nordquist v. McGraw-Hill Broadcasting Co*., 32 Cal. App. 4th 555, 562 (1995) (holding that under California wage and hour law, "[e]xemptions are narrowly construed against the employer and their application is limited to those employees plainly and unmistakably within their terms").

      **1.  FLSA Amusement Exemption under 29 U.S.C. § 213(a)(3)**

        a.  Statutory and Regulatory Framework

      "The Fair Labor Standards Act was designed to 'extend the frontiers of social progress' by 'insuring to all our able-bodied working men and women a fair day's pay for a fair day's work.'" *A.H. Phillips v. Walling*, 324 U.S. at 493 (quoting Message of the President to Congress, May 24,

1934).  Among the protections offered to workers under the FLSA are a federal minimum wage and limits on overtime.  *See* 29 U.S.C. §§ 206, 207.  However, the FLSA also "contains a litany of exemptions," including the amusement exemption that is at issue in this case.  *See Chen v. Major League Baseball*, 2014 WL 1230006, at *3 (S.D.N.Y. Mar. 25, 2014). The amusement exemption of the FLSA is set forth in 29 U.S.C. § 213(a)(3), which provides that 29 U.S.C. §§ 206 and 207 do not apply with respect to:

> any employee employed by an establishment which is an amusement or recreational establishment . . . if (A) it does not operate for more than seven months in any calendar year, or (B) during the preceding calendar year, its average receipts for any six months of such year were not more than $33^{1/3}$ per centum of its average receipts for the other six months of such year . . . .

29 U.S.C. § 213(a)(3).

When it enacted this provision, in 1961, Congress described the exemption in 29 U.S.C. § 213(a)(3) as one "for employees of amusement and recreational establishments operating on a seasonal basis" and noted that "[t]hese establishments are typically those operated by concessionaires at amusement parks and beaches for 6 months or less a year."  S.Rep. No. 145, 87th Cong., 1st Sess., *reprinted* in 1961 U.S. Code Cong. & Admin. News at 1620, 1647-48. Another Congressional report stated that this provision was "intended to exempt from overtime requirements such seasonal, recreational or amusement activities as amusement parks, carnivals, circuses, sports events, parimutuel racing, sport boating or fishing, and other similar or related activities . . . ."  House Comm. Education & Labor, *Fair Labor Standards Amendments of 1965: Report to Accompany H.R. 10518,* H. Rep. No. 89-871 (Comm. Print Aug. 25, 1965) at 35.

### i.  "Establishment"

The term "establishment" is not defined in the FLSA and courts have found that Congressional intent as to the meaning of this term is ambiguous in some contexts.  *See Wright v. Adventures Rolling Cross* Country, 2013 1758815, at *5 (N.D. Cal., April 24, 2013).

In *A.H. Phillips v. Walling*, the Supreme Court addressed the meaning of "establishment"

United States District Court
Northern District of California

as used in 29 U.S.C. § 213(a)(2), which created an exemption for certain retail establishments." [4] 324 U.S. at 807.  Citing the remedial purpose of the FLSA, the Court held that exemptions from its requirements may be found only when that result is consistent with "the plain meaning of the statutory language and the intent of Congress."  324 U.S. at 808.  The Court went on to address whether "employees working in the warehouse and central office of an interstate grocery chain store system [were] 'engaged in any retail . . . establishment' within the meaning of Section 213(a)(2) so as to be exempt from the wage and hour provisions."  *Id*. at 807.  The Court noted that "Congress used the word 'establishment' as it is normally used in business and in government – as meaning a distinct physical place of business" and went on to reason that the individual stores in a system of chain stores, as well as the central office and the warehouse, were each a separate establishment.  *Id*. at 810.  Based on this reasoning, the Court found that the activities in which the employees were engaged at the warehouse and central office were not retail activities and therefore, the exemption did not apply.  *Id.*

The focus on the physical location of business activities is also reflected in the interpretive rules issued by the Department of Labor ("DoL").  *See* 29 C.F.R. § 779.23.  These rules are not binding on courts but are followed to the extent that they are persuasive based on the thoroughness and consistency of their reasoning.  29 C.F.R. § 779.8 (citing *Skidmore v. Swift*, 323 U.S. 124 (1944)).  The DoL defines "establishment," as used in § 213(a)(3), as a 'distinct physical place of business' rather than . . . 'an entire business or enterprise' which may include several separate places of business."  29 C.F.R. § 779.23.  The distinction between an "establishment" and an "enterprise" is drawn from the FLSA itself, which defines an "enterprise" as "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more

---

[4] The retail establishment exemption as set forth in § 213(a)(2) was repealed in 1989 and replaced with a provision that exempts "all small enterprises with a total annual sales volume of less than $500,000." *See Gatto v. Mortgage Specialists of Illinois, Inc*., 442 F.Supp.2d 529, 538 (N.D.Ill., 2006) (citing Pub.L. No. 101-157, § 3(c)(1), 103 Stat. 938, 939 (Nov. 17, 1989); 29 U.S.C. § 203(s)(1)(A)(ii); *Reich v. Delcorp*, 3 F.3d 1181, 1183 (8th Cir. 1993)).  Nonetheless, courts (and the Department of Labor) continue to look to the Supreme Court's decision in *A.H. Phillips v. Walling*  for guidance as to the meaning of the term "establishment" as used in § 213(a)(3). *See, e.g., Wright*, 2013 WL 1758815, at *4; 29 C.F.R. § 779.23.

1 establishments or by one or more corporate or other organizational units including departments of

2 an establishment operated through leasing arrangements . . . ."  29 U.S.C. § 203(r)(1).

3      The DoL regulations recognize that an "enterprise" may be "composed of a single

4 establishment."  29 C.F.R. § 779.303.  In that situation, the two terms will have the same meaning.

5 However, where a business is a "multiunit operation," that is, operates at multiple physical

6 locations, "[t]he term 'establishment' . . . is not synonymous with the words 'business' or

7 'enterprise.'"  29 C.F.R. § 779.303.  The regulation explains:

8 
9 > In such a multiunit operation some of the establishments may qualify for exemption, others may not.  For example, a manufacturer may operate a plant for production of its goods, a separate warehouse for storage and distribution, and several stores from which its products are sold. Each such physically separate place of business is a separate establishment. In the case of chain store systems, branch stores, groups of independent stores organized to carry on business in a manner similar to chain store systems, and retail outlets operated by manufacturing or distributing concerns, each separate place of business ordinarily is a separate establishment.

14 *Id.*

15      Notwithstanding the emphasis on physical location in determining what constitutes an

16 establishment, the DoL regulations provide that under some circumstances business operations

17 conducted at the *same* physical location may be more than one establishment.  29 C.F.R. §

18 779.305 ("two or more physically separated portions of a business though located on the same

19 premises, and even under the same roof in some circumstances may constitute more than one

20 establishment for purposes of exemptions").  In particular, "the retail portion of an establishment

21 would be considered a separate establishment from the unrelated portion for the purpose of the

22 exemption if (a) It is physically separated from the other activities; and (b) it is functionally

23 operated as a separate unit having separate records, and separate bookkeeping; and (c) there is no

24 interchange of employees between the units."  *Id.*

25      Similarly, regulations promulgated by the Equal Employment Opportunity Commission

26 with reference to the Equal Pay Act – which is part of the FLSA – also indicate that "unusual

27 circumstances may call for two or more distinct physical portions of a business enterprise being

28 treated as a single establishment."  29 C.F.R. § 1620.9(a).  Section 1620.9 is entitled "Meaning of

United States District Court<br>Northern District of California

1    'establishment'" and offers the following example of circumstances in which two or more distinct

2    portion of an enterprise may be considered a single establishment:

3           For example, a central administrative unit may hire all employees,
             set wages, and assign the location of employment; employees may
4            frequently interchange work locations; and daily duties may be
             virtually identical and performed under similar working conditions.

5

6    *Id.*[5]

7    _____

8    [5] In its supplemental brief, Defendant argues that the EEOC's guidance as to the definition of
     "establishment" relates only to the Equal Pay Act and that this regulation marks a departure from
9    the approach taken by the Department of Labor's "hard-and-fast rule" in the minimum
     wage/overtime context that workplaces that are not located in the same place are considered
10   separate establishments.  *See* Butler Amusements, Inc.'s Supplemental Brief Supporting its
     Motion for Partial Summary Judgment ("Defendant's Supplemental Brief") at 9 ("the EEOC's
11   'presumption' is *sui generis*:  It was developed solely 'for purposes of the [Equal Pay Act]'").
     According to Defendant, the EEOC adopted an approach in which this rule was only a
12   *presumption* because of a "unique proof problem" in Equal Pay Act cases.  *Id.* at 9-10 (quoting
     *Brennan v. Goose Creek Consolidated Indep. School Dist.*, 519 F.2d 53, 57 (5th Cir. 1975), in
13   which the court noted that a "narrow construction of the word 'establishment,' as used in [the
     Equal Pay Act], might make proof of discrimination more difficult, thus frustrating Congressional
14   intent").  Defendant's argument, while creative, is flatly contradicted by the regulation itself, as
     well as the comments of the EEOC that accompanied the regulation when it was adopted in its
15   final form.  In particular, 29 C.F.R. § 1620.9 begins with the following sentence:  "Although not
     expressly defined in the FLSA, the term 'establishment' had acquired a well settled meaning by
16   the time of enactment of the Equal Pay Act."  Nothing in the regulation reflects an intent to
     deviate from that "well settled meaning" in the context of the Equal Pay Act.  Any doubt on this
17   question is dispelled by the comment of the EEOC when the regulation became final responding to
     comments that the proposed regulation (which was similar in all material respects) marked a
18   departure from the Department of Labor's definition of "establishment":

19          Several comments characterized this definition of establishment as a
            departure from the DOL's definition at 29 CFR 800.108.  That
20          definition stated that each physically separate place of business is
            usually considered a separate establishment. *There is no intention to
21          change that basic presumption.* Subsections (a) and (b) make clear
            that in the usual case each physically separate place of business will
22          be considered a separate establishment. Portions of subsection (b),
            however, illustrate that in certain circumstances more than one
23          establishment may be contained in a single place of business or, two
            or more separate physical places of business may constitute a single
24          establishment. *The Commission believes that this section continues
            in effect the traditional meaning of the term establishment as it has
25          evolved under the FLSA. At the same time, it recognizes the DOL
            approach which allowed a measure of flexibility whenever called for
26          by the facts of a given case. The section acknowledges that certain
            factual situations may call for a restricted use of the term while
27          others may call for an expanded use.*

28          The Commission has redrafted the interpretation to make it clear
            that it intends to continue in effect the DOL interpretation that each

United States District Court
Northern District of California

ii.  "Employed by"

The DoL regulations provide that "[i]n order to meet the requirement of actual employment 'by' the establishment, an employee, whether performing his duties inside or outside the establishment, must be employed by his employer in the work of the exempt establishment itself in activities within the scope of its exempt business."  29 C.F.R. § 779.308.  Section 779.309 further explains that an exemption will not be available for "employees who, although actually working in the establishment and even though employed by the same person who is the employer of all under section 3(d) of the Act, are not 'employed by' the exempt establishment."  These employees are considered to be employed *in* the establishment but not *by* the establishment.  *Id*. The regulation explains:

> Thus, traveling auditors, manufacturers' demonstrators, display-window arrangers, sales instructors, etc., who are not "employed by" an exempt establishment in which they work will not be exempt merely because they happen to be working in such an exempt establishment, whether or not they work for the same employer. (*Mitchell v. Kroger Co*., 248 F. 2d 935 (CA8).) For example, if the manufacturer sends one of his employees to demonstrate to the public in a customer's exempt retail establishment the products which he has manufactured, the employee will not be considered

> separate place of business is ordinarily considered a separate establishment.

51 Fed. Reg. 29816, 29817 (Aug. 20, 1986) (emphasis added).

Nor does the *Brennan* case support Defendant's position.  In that case, involving an alleged violation of the Equal Pay Act, the court found that all of the schools in a school district constituted a single "establishment" based on the specific facts of the case. 519 F.2d at 56. Although the court remarked that its conclusion was likely consistent with Congressional intent as to the Equal Pay Act, nothing in *Brennan* suggests the court intended to adopt a different meaning for the term "establishment" in the Equal Pay Act context from the one that applies generally under the FLSA. Rather, the court held that its conclusion was "contrary neither to the administrative regulations nor the judicial constructions of the [FLSA]."  *Id*.  The court then expressly addressed the DOL regulations governing the meaning of "establishment" under the FLSA, including 29 C.F.R. §§ 779.0, 779.03 and 779.24, and discussed the case law interpreting the meaning of "establishment" in the context of the retail establishment exemption.  *Id*. at 56-57 (citing *Phillips Co. v. Walling*, 324 U.S. 490 (1945); *Mitchell v. Birkett*, 286 F.2d 474 (8th Cir. 1961); *Brennan v. Yellowstone Park Lines*, 478 F.2d 285 (10th Cir. 1973)).  In short, Defendant's assertion that 29 C.F.R. § 1620.9 is applicable only to the Equal Pay Act and does not offer guidance as to the meaning of "establishment" in the context of overtime and minimum wage claims asserted under the FLSA has no merit.

14

United States District Court
Northern District of California

> exempt under section 13(a)(2) since he is not employed by the retail establishment but by the manufacturer. The same would be true of an employee of the central offices of a chain-store organization who performs work for the central organization on the premises of an exempt retail outlet of the chain (*Mitchell v. Kroger Co.*, supra.).

*Id.*

The requirement that employees must be employed "by" the establishment rather than simply "in" the establishment was the subject of DoL Opinion Letter 760 (dated January 17, 1968). There, the DoL addressed whether a janitorial service that provided its service on a contract basis to a race track could claim the amusement exemption to the extent that the racetrack was a seasonal establishment that provided amusement and recreation to the public. The DoL advised that it could not, explaining as follows:

> . . . these janitorial services are not services to the patrons of the race track as are the amusement or recreational services which the race track provides its patrons. Where, as in this case, the race track serves the public and the independent janitorial service contractor provides ordinary business services to the race track the functional integration necessary for a single establishment does not exist. The exemption in section 13(a)(3) does not extend to employees who although actually working in an establishment are not "employed by" the establishment. In order to meet the requirement of actual employment "by" the establishment, an employee must be employed in the work of the exempt establishment itself in activities within the scope of its business.

Opinion Letter 760; *see also Gieg v. DDR, Inc.*, 407 F.3d 1038, 1051 (9th Cir. 2005) (holding that "departments [that are] engaged in truly separate business endeavors that [are] wholly 'extraneous' to the work targeted by the relevant exemption" will not meet the "employed by" requirement of the exemption).

In determining whether an employee is covered under the FLSA, "[t]he workweek is to be taken as the standard." 29 C.F.R. § 776.4(a). The regulation continues:

> Thus, if in any workweek an employee is engaged in both covered and noncovered work he is entitled to both the wage and hours benefits of the Act for all the time worked in that week, unless exempted therefrom by some specific provision of the Act. The proportion of his time spent by the employee in each type of work is not material. If he spends any part of the workweek in covered work he will be considered on exactly the same basis as if he had engaged exclusively in such work for the entire period. Accordingly, the total number of hours which he works during the workweek at both types of work must be compensated for in accordance with the minimum

15

wage and overtime pay provisions of the Act.

*Id*.  However, in the context of the retail establishment exemption, the DoL has found that employees may be "employed by" the establishment even if they perform "an insignificant amount of . . . incidental work or perform[ ] work sporadically for the benefit of another establishment of their employer."  29 C.F.R. § 779.311.

### iii.  "Receipts"

Although the Ninth Circuit has not addressed the question, courts in other circuits have held that the term "receipts" as used in § 213(a)(3) refers to "money which is actually received at the time it is actually received."  *Bridewell v. Cincinatti Reds*, 155 F.3d  828, 830 (6th Cir. 1998) (holding that "receipts" referred to money actually received at the time it was received and therefore, that the accrual method of accounting, which allocated advance ticket sales to the month for which tickets were sold rather than the month when the ticket was actually sold, could not be used to satisfy "receipts" requirement of § 213(a)(3));  *see also Liger v. New Orleans Hornets NBA Ltd. Partnership*, 565 F. Supp. 2d 680, 686 (E.D. La. 2008) (holding that calculation of ratio using revenues rather than receipts did not provide sufficient evidence that § 213(a)(3) applied for defense based on exemption to survive summary judgment);  *Derrig v. Rich Harvest Farms Co*., 2010 WL 375188, at *2 (N.D. Ill., Feb. 1, 2010).

### 2.  Parties' Contentions

The parties' dispute as to the applicability of the amusement exemption to Plaintiffs' FLSA claims turns on two issues: 1) are Plaintiffs employed by the carnivals, which are distinct establishments, or by the central office in Beaverton, Oregon; and 2) if the relevant establishment is the carnivals, has Defendant offered sufficient evidence to establish that they are seasonal or meet the requirements of the receipts test.

With respect to the first issue, Defendant contends that each discrete event or carnival it operates is an "establishment" under § 213(a)(3) and that Plaintiffs are employed by these establishments to the extent they are engaged in the business of operating the carnivals.  Plaintiffs counter that where, as here, an employer's business operations are inherently mobile, the term "establishment" cannot refer to each individual location but rather, should be construed as the

16

1    "highest level of integrated operation."  In this case, Plaintiffs contend, that is the office in

2    Beaverton, Oregon.  Further, because that office is not an "amusement establishment," Plaintiffs

3    assert, the amusement exemption does not apply to Plaintiffs' FLSA claims. Plaintiffs also argue

4    that even if the Court agrees with Defendant that each carnival location is a separate

5    establishment, summary judgment is inappropriate because Defendant has not offered any

6    evidence of the work Plaintiffs actually did when they worked for these establishments (as

7    opposed to the *descriptions* of the jobs for which they were hired).  Plaintiffs point to evidence

8    that John Doe II spent part of each year working at Defendant's Santa Nella maintenance yard,

9    where no amusement activities occur.   Thus, Plaintiffs assert, there is at least a fact question as to

10   whether they were "employed by" the carnivals.

11        As to the second question, Defendant argues that each carnival operated less than seven

12   months and that even if the combined receipts of all of the carnivals operated by Defendant are

13   considered, the receipts requirement is met because the average monthly revenues for the six

14   lowest revenue months are not more than $33\,{}^{1}/_{3}\%$  of the average revenue for the six highest

15   revenue months.  Plaintiff asserts Defendant has failed to present sufficient evidence to survive

16   summary judgment as to receipts because its accountant has calculated the ratio set forth in §

17   213(a)(3) based on revenues rather than actual receipts for the relevant months.

18        **3.  Discussion**

19        In *A.H. Phillips v. Walling*, the Supreme Court instructed that exemptions to the FLSA

20   may be found only when that result is consistent with "the plain meaning of the statutory language

21   and the intent of Congress."  324 U.S. at 493.   For the reasons stated below, the Court concludes

22   that it does not have sufficient evidence to make a definitive determination as to whether the

23   exemption applies and therefore denies both parties' requests for summary judgment on that broad

24   question.

25        The regulations and case law suggest that there are at least two scenarios in which an

26   employee might not be covered by the amusement exemption of the FLSA even though his or her

27   employer's business is primarily devoted to recreation or amusement: 1) situations in which

28   employees are employed "in" but not "by" one or more exempt establishment; and 2) cases where

United States District Court
Northern District of California

17

1    the *only* possible establishment is the central office but no recreational activities are conducted at

2    that location, as in *Wright*.   The Court addresses each of these scenarios below.

3        Under the FLSA, an exemption that applies to an establishment covers only the employees

4    who are employed "by" that establishment.  An employee who merely works "in" the

5    establishment will not be covered.  *See* 29 C.F.R. § 779.309.  Examples of employees who work

6    "in" an establishment but are not employed "by" the establishment are "traveling auditors,

7    manufacturers' demonstrators, display-window arrangers, sales instructors."  *Id*.  Similarly, the

8    DoL has found that employees of a janitorial service who worked at exempt racetracks were

9    employed "in" but not "by" the racetrack because the janitors were not "employed in the work of

10   the exempt establishment itself in activities within the scope of its business."  Opinion Letter 760.

11   And in *Brennan v. Yellowstone Park Lines,* 478 F.2d 285 (10th Cir. 1973), the court found that

12   "central employees who perform[ed] functions which serve[d] several, or all, of the company's

13   establishments at the various locations throughout [Yellowstone Park]" were outside the scope of

14   the recreation exemption even though other individuals who were employed "by" these

15   establishments were exempt.   478 F.2d at 290.

16        In each of these examples, the key consideration in determining whether the employee

17   was employed "by" the exempt establishment was the *type* of work the employee performed, not

18   the location where the work was performed.   Thus, the auditors in *Mitchell v. Kroger Co*., 248 F.

19   2d 935 (8th Cir. 1957), which is cited in 29 C.F.R. § 779.309, were conducting audits at retail

20   stores that were exempt under the "retail store" exemption but were not themselves exempt

21   because their work was not within the scope of the activities of the retail stores.  Similarly, the

22   janitors at issue in the DoL letter discussed above were not providing amusement or recreational

23   services to the public even though the racetracks where they worked did.  In *Brennan*, the

24   Yellowstone Park employees who were not exempt included laundry employees and central

25   maintenance and repair workers, who also did not provide recreational services, even though the

26   establishments where they worked did.  *See* 478 F.2d at 490.

27        In this case, the record has not been fully developed as to the types of work Plaintiffs

28   actually performed while employed by Defendant.  The job title Defendant used in its H-2B visa

United States District Court
Northern District of California

18

applications and classified advertisements was "amusement and recreation attendants," corresponding to DoL job code 39-3091.00.  *See* Stender Motion Decl., Ex. B-E.  It is what Plaintiffs actually *did* rather than how their work is characterized, however, that determines whether the exemption applies.  *See Jackson v. Maui Sands Resort, Inc*., 2009 U.S. Dist. LEXIS 130818, at *11 (N.D. Ohio, September 8, 2009) (citing *Chao v. Double JJ Resort Ranch*, 375 F.3d 393, 397 (6th Cir. 2004)).  Defendant has offered a declaration stating that "Plaintiffs' duties were within the approved scope of work" for the DoL job code listed on the H-2B applications. Brajevich Motion Decl., ¶ 38.  This conclusory statement, however, is insufficient to show, as a matter of law, that Plaintiffs were employed "by" the carnivals.  Further, Plaintiffs have presented evidence that at least Doe II may have performed work that was for the enterprise as a whole rather than one specific carnival, namely, his work at Defendant's repair yard in Santa Nella, where he performed "specialized maintenance work, including repainting Butler's rides and fixing broken ones."  Stendar Opposition Decl., Ex. H (Doe II Decl.), ¶ 7.  As there remain material issues of fact regarding the nature of Plaintiffs' work and whether they were employed "by" the specific carnivals, the Court cannot resolve this question, one way or the other, at this stage of the case.

Another scenario in which the recreation exemption might not apply is the one in *Wright v. Adventures Rolling Cross Country, Inc*.  In that case, the court addressed whether trip leaders employed by a business that operated "chaperoned tours" for students were exempt under Section 213(a)(3).  2013 WL 1758815 (N.D. Cal. April 24, 2013).  The business at issue had an administrative office in Mill Valley, California, where trip leaders received training before the trips and were debriefed after the trips.  *Id*. at * 1.  The defendant argued that it was exempt from minimum wage and overtime claims under § 213(a)(3) on the basis that it was an "establishment" (because the administrative office was a "distinct physical place of business") and the services it offered were recreational or constituted an organized camp.  *Id*. at *5. The plaintiffs argued that while the administrative office might be an "establishment" based on the fact that it was a distinct place of business, it was not an "amusement or recreational establishment" because the amusement and recreation activities did not occur there.  *Id*. at *4.  In other words, the focus of the dispute was

United States District Court
Northern District of California

1    not whether the central office was the relevant "establishment" (both parties at least assumed that

2    it was) but rather, whether the recreational activities that occurred off-premises could be

3    considered in determining the *nature* of the establishment.  On that question, the court found that

4    the plaintiff's position was consistent with the plain language of § 213(a)(3), which provides that

5    the exemption applies to "an establishment which *is* an amusement or recreational establishment."

6    *Id*. at *5.  The court reasoned that the defendant's position ignored the word "is."   *Id*.  The court

7    recognized that the defendant's position was "not without some merit" but concluded that the

8    exemption did not apply because the plain language of the statute did not "clearly weigh in

9    Defendant's favor and because the Congressional intent behind the exemption [was] ambiguous."

10   *Id*. at *6.

11          *Wright* is distinguishable from the facts here because the parties in that case *agreed* that the

12   only establishment that could possibly have employed the plaintiffs in that case was the central

13   office in Mill Valley;  the defendant did *not* contend that the employees set up separate (albeit

14   temporary) establishments at the locations where they provided recreation and amusement

15   services.  Nor was there evidence of such establishments.  In contrast, Defendant in this case

16   points to the separate carnivals as the relevant "establishments" and cites authority that offers

17   some support for this position.   Certainly, there is authority to support the proposition that

18   establishments can be temporary.  *See, e.g., Chen v. Major League Baseball*, 2014 WL 1230006

19   (Mar. 25, 2014 S.D.N.Y.) (holding that a fan festival lasting less than five days that was set up by

20   Major League Baseball at a convention center was the relevant establishment for determining

21   whether exemption applied to FLSA claims by volunteer who worked at the festival);   *Brennan v.*

22   *Southern Productions, Inc.,* 513 F.2d 740, 744 (6th Cir. 1975) (holding that temporary show

23   headquarters set up in advance of show was relevant establishment for purposes of FLSA

24   exemption).  While these cases do not establish, as a matter of law, that the carnivals in this case

25   *must* be the relevant establishments, to the extent that the individual carnivals *might* be the

26   relevant establishments, the approach taken in *Wright* does not apply here.

27          Further, under the facts of this case, *Wright* does not support the conclusion that the

28   Beaverton, Oregon office must be the relevant establishment and the Court finds, as a matter of

law, that it is not. Of particular significance are the undisputed facts that Plaintiffs never worked at the Beaverton office and received their work assignments and their paychecks from their local unit (and not from the Beaverton office).  In addition, Plaintiffs have presented no evidence that they were hired out of the Beaverton office or that they ever received any work assignments out of that office.  Even assuming the Beaverton office is Defendant's "central office," as Plaintiffs contend, the Court has found no authority that supports Plaintiffs' contention that this fact, by itself, is enough to show that it is the relevant establishment (except under the limited circumstances such as the ones in *Wright*, which do not exist here).

The Court declines to decide, however, whether the individual carnivals should be found to be the relevant establishments, as Defendant asserts, or rather, some other portion of Defendant's business constitutes the "establishment."  On this question, like the question of whether Plaintiffs were employed "by" the carnivals, the Court finds that factual questions remain that make summary judgment on this issue inappropriate.  In particular, the evidence in the record relating to the functioning of the units to which Plaintiffs were assigned suggests that this case may present the unusual situation in which more than one physical location should be found to constitute a single establishment.  *See* 29 C.F.R. § 1620.9(a) (noting that two or more "distinct physical portions of a business enterprise" may be a single establishment where, for example, "one or more central administrative unit may hire all employees, set wages, and assign the location of employment; employees may frequently interchange work locations; and daily duties may be virtually identical and performed under similar working conditions"); *Brennan v. Goose Creek Consol. Independent School Dist.*, 519 F.2d 53, 57 (5th Cir. 1975) (holding  that in case involving FLSA claims by school janitors,  entire school district was the establishment rather than the individual schools within the district because "the central administration of the school district (not the principals of the schools) hired the janitors, determined their wages, [and] assigned them to the school building in which they were to work" and "the work schedule and the janitors' daily duties [were] controlled to a large extent by the central administrators [and did] not differ from building to building.");  *Shultz v. Hasam Realty Corp.*, 316 F.Supp. 1136, 1143-1144 (D.C. Fla. 1970) (holding that resort that was housed in "five separate facilities" and which included a golf course

1   that was located "some distance from the main complex" constituted a single establishment under

2   the FLSA where the employees were employed by the resort as a whole, the resort operated as a

3   "functional, cohesive unit," "[n]o separate records [were] maintained, and employees [were]

4   interchanged among the hotel facilities, as needed").  Because the factual record is not fully

5   developed on this question, the Court declines to decide it at this stage of the case.[6]

6           **C.      California State Law Exemption for Carnival Ride Operators**

7                   **1.  Plaintiffs' Claims under California Wage and Hour Laws**

8           Plaintiffs assert claims for minimum wage under Cal. Labor Code § 1197 (requiring that

9   employers pay their employees minimum wage) (Claim Four) and overtime under Cal. Labor

10  Code § 510 (providing that employers must pay overtime wages for work in excess of eight hours

11  in a day or 40 hours a week) (Claim Five).  In support of these claims, Plaintiffs invoke IWC

12  Wage Order 10-2001 ("Wage Order 10" or "Wage Order 10-2001"), entitled "Order Regulating

13  Wages, Hours, and Working Conditions in the Amusement and Recreation Industry."  Cal. Labor

14  Code Sections Cal. Code Regs. tit. 8, § 11100.

15          Plaintiffs also seek reimbursement for certain expenses they incurred in connection with

16  their employment, including fees associated with recruitment, visas and transportation (Claim

17  Six).  Complaint ¶¶ 92-98.  Plaintiffs' Complaint invokes Wage Order 10 and Cal. Labor Code §

18  2802 in support of this claim.  *Id.*  Plaintiffs have stipulated, however, that the claim is asserted

19  under the latter provision only and that they do not intend to argue that they are entitled to

20  reimbursement under Wage Order 10.  Labor Code § 2802 provides that "[a]n employer shall

21  indemnify his or her employee for all necessary expenditures or losses incurred by the employee

22  in direct consequence of the discharge of his or her duties, or of his or her obedience to the

23

24  _____

    [6] The Court notes that at oral argument, it raised the possibility that Defendant's entire business,
25  including its permanent offices and the temporary carnivals, constitutes a single establishment.
    The parties appear be in accord that such an approach would be incorrect and the Court agrees.
26  The evidence indicates that Defendant conducts a variety of activities at its permanent locations
    and that its carnivals and offices are spread over a wide geographical area.  Under these
27  circumstances, to consider the entire business a single establishment would be inconsistent with
    the case law and regulations, which distinguish between an "enterprise" and an "establishment"
28  and place heavy emphasis on the physical location of business operations, as discussed above.

United States District Court
Northern District of California

1    directions of the employer."

2         Finally, Plaintiffs seek waiting time penalties under Cal. Labor Code § 203, which

3    authorizes an employee to recover waiting time penalties in an amount equal to the employee's

4    daily wages for up to thirty days if an employer willfully fails to pay any wages earned and due to

5    an employee within the required time period under Cal. Labor Code §§ 201 and 202.

6                   **2.   Statutory and Regulatory Framework**

7         California wage and hour law is governed by the California Labor Code and the Wage

8    Orders promulgated by the Industrial Welfare Commission ("IWC").  *See* Cal. Labor Code

9    Sections 1173, 1185.  The relevant wage order here is Wage Order 10-2001.  Section 3(A) of that

10   order requires that employers pay overtime.  Section 4(A) requires that "[e]very employer shall

11   pay to each employee" the minimum wage except that "learners" may be paid 85% of the

12   minimum wage rate for their first 160 hours of work if they have no previous related experience.

13   Section 20 of Wage Order 10-2001 provides for penalties, including "any . . . civil penalties

14   provided by law," for failure to comply with the requirements of the Wage Order.   Wage Order

15   10 also contains the following exemption:

16              1.  Applicability of Order [.] This order shall apply to all persons
                employed in the amusement and recreation industry whether paid on
17              a time, piece rate, commission, or other basis, except that:

18              . . .

19              (F) Except as provided in Sections 1, 2, 4, 10, and 20, the provisions
                of this order shall not apply to full-time carnival ride operators
20              employed by traveling carnivals.

21   Wage Order 10-2001, Section 1(F).

22         Wage Order 10-2001 was adopted in the wake of the enactment of the Eight-Hour-Day

23   Restoration and Workplace Flexibility Act ("the Act"), which was signed into law on July 20,

24   1999.  Richard J. Simmons, Wage and Hour Manual for California Employers 24 (15th Ed. 2012).

25   The Act "was in large measure a response to the IWC's amendment of five wage orders on April

26   11, 1997, which, among other things, eliminated the state's daily overtime rule [for certain types

27   of work] in favor of the less restrictive weekly overtime rule of the federal FLSA."  *Collins v.*

28   *Overnite Transp. Co.*, 105  Cal. App. 4th 171, 176 (2003).  In particular, the IWC wage orders at

United States District Court
Northern District of California

1  issue eliminated the eight-hour work day  as to  overtime pay  for workers in the manufacturing

2  industry  (Wage Order No. 1),  technical workers (Wage Order No. 4), public housekeeping

3  workers (Wage Order 5), mercantile workers (Wage Order 7) and transportation workers (Wage

4  Order No. 9).  *See California Labor Federation, AFL-CIO v. Industrial Welfare Comm'n*

5  63 Cal.App.4th 982, 989 n. 3 (1998).  The Act declared these wage orders null and void and

6  restored the 8-hour work day.  *Collins*, 105 Cal. App. 4th at 176.  It also "established a new

7  statutory scheme governing hours of labor and overtime compensation for all industries and

8  occupations."  *Id*.  The IWC amended portions of all of its wage orders (including Wage Order

9  10) to effectuate the purposes of the Act.  Richard J. Simmons, Wage and Hour Manual for

10  California Employers 25 (15th Ed. 2012).

11         Previously, Wage Order 10 had contained a provision stating that "[t]he provisions of

12  Sections 3 [overtime] and 4 [minimum wage] of this Order shall not apply to full-time ride

13  operators employed by traveling carnivals."  88 Cal. Regulatory Notice Reg. 812, 813 (May 7,

14  1988).

15             **3.  Parties' Contentions**

16         There are two key issues before the Court as to the exemption in Wage Order 10-2001.

17  First, what is the significance of the words "[e]xcept as provided in Sections 1, 2, 4, 10, and 20" in

18  the Section 1(F).   Plaintiffs assert that these words make clear that the exemption for "full-time

19  carnival ride operators" does not extend to penalties under Section 20 or the minimum wage

20  requirements of Section 4 (although Plaintiffs concede that the exemption *does* apply to overtime

21  claims, governed by Section 3, if Plaintiffs are "full-time carnival ride operators").   In their

22  supplemental brief, Plaintiffs also point to evidence that when Wage Order 10 was revised in

23  2001, it was the intent of the IWC to eliminate the exemption from minimum wage for full-time

24  carnival ride operators.  See Plaintiff's Supplemental Brief Regarding Applicability of Wage

25  Order 10-2001 at 4-6.  Defendant contends that the words quoted above do not create an exception

26  to the exemption for minimum wage claims because nothing in Section 4 (or the other sections

27  listed in that phrase) specifically addresses carnival ride operators.  Defendant concedes in its

28  supplemental brief that it was unable to identify any legislative history that supported its position;

United States District Court
Northern District of California

1    indeed, it was "unable to identify any legislative history pertinent to the 2001 changes to the

2    carnival exemption."   Defendant's Supplemental Brief at 18.

3         The second issue the Court must decide is whether, assuming the exemption for carnival

4    ride operators is applicable to  any of Plaintiffs' state law claims, either party has established, as a

5    matter of law, that Plaintiffs did or did not work as "full-time carnival ride operators" who are

6    subject to the exemption.

7         **4.  Discussion**

8              a.   Meaning of Wage Order 10-2001, Section 1(F)

9         "As quasi-legislative regulations, wage orders are to be construed in accordance with the

10   ordinary principles of statutory interpretation."  *Singh v. Superior Court*, 140 Cal. App. 4th 387,

11   392 (2006).  Thus, the Court must determine the intent of the legislature, looking first to the words

12   of the provision, "attempting to give effect to the usual, ordinary import of the language and to

13   avoid making any language mere surplusage."  *Id*. (citing *Brewer v. Patel*, 20 Cal. App. 4th 1017,

14   1021 (1993); *Regents of University of California v. Public Employment Relations Bd.*, 41 Cal.3d

15   601, 607 (1986)).  If the meaning of the text is clear, "'then the Legislature is presumed to have

16   meant what it said, and the plain meaning of the language governs.'"  *Id*. (quoting *Lennane v.*

17   *Franchise Tax Bd*., 9 Cal. 4th 263, 268 (1994)).  On the other hand, if the language is "ambiguous

18   and susceptible of more than one reasonable interpretation . . . '[courts] look to a variety of

19   extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the

20   legislative history, public policy, contemporaneous administrative construction, and the statutory

21   scheme of which the statute is a part. [Citations.]'"  *Id*. (quoting *Nolan v. City of Anaheim*, 33 Cal.

22   4th 335, 340 (2004)).

23        Here, the Court finds the words of Section 1(F) to be unambiguous, making clear that the

24   exemption for "full-time carnival ride operators" does not apply to Sections 1, 2, 4, 10 and 20 of

25   the Wage Order, that is, that the requirements of those sections *apply* to carnival-ride operators.

26   This means that under Wage Order 10-2001, employers must pay full-time carnival ride operators

27   minimum wage, as set forth in Section 4(A)), and that they may be subject to penalties under

28   Section 20.  Defendant's argument that the exceptions listed in Section 1(F) do not actually limit

United States District Court
Northern District of California

25

United States District Court
Northern District of California

1   the exemption because the cited sections do not specifically address carnival ride operators has no

2   merit because such a construction would render the words "[e]xcept as provided in Sections 1, 2,

3   4, 10, and 20" mere surplusage.  Further, even if the Court were to agree that the language of

4   Section 1(F) is susceptible to more than one meaning, the history of this provision makes clear that

5   the 2001 amendment of Wage Order 10 was intended to eliminate the exemption from minimum

6   wage requirements that previously had applied to full-time carnival ride operators.  *See*

7   Declaration of Jessica Stender in Support of Plaintiffs' Supplemental Briefinf Regarding

8   Applicability of Wage Order 10-2001 ("Stender Supp. Decl."), Ex. C (transcript of August 17,

9   2000 public meeting of California Department of Industrial Relations Industrial Welfare

10   Commission) (reflecting that motion was passed by IWC to propose regulations that would

11   "eliminate exemption[ ] from minimum wage . . .[for] full-time carnival ride operators"); *id.*, Ex.

12   D (transcript of October 23, 2000 public meeting of California Department of Industrial Relations

13   Industrial Welfare Commission) (reflecting that motion was passed by IWC adopting amendment

14   that "[e]liminate[d] the . . . exemption[] from the minimum wage for . . . full-time carnival ride

15   operators").   Therefore, the Court concludes that under Wage Order 10-2001, full-time carnival

16   ride operators are exempt from overtime requirements but are *not* exempt from the requirements of

17   Sections 1, 2, 4, 10 and 20, including minimum wage requirements and penalties.

18                        b.   Whether Plaintiffs are Full-Time Carnival Ride Operators

19          As discussed above, the evidence presented by the parties as to what type of work

20   Plaintiffs performed during their employment with Defendant is mixed.  Although Defendant cites

21   the job descriptions provided to the DoL, which may provide some evidence that Plaintiffs worked

22   as full-time ride operators, Plaintiffs points out that the H-2B applications submitted by Defendant

23   to the DoL describe Plaintiffs' positions as "Amusement and Recreation Attendants," which

24   corresponds to a job category that includes more than simply operating carnival rides.   They also

25   provide evidence that Plaintiffs were trained on subjects that appear unrelated to the operation of

26   rides, that John Doe II worked at a separate maintenance yard painting and repairing rides (rather

27   than operating them) and that Plaintiffs' work included cleaning up the carnival grounds.

28   Therefore, the Court finds that fact questions remain as to whether Plaintiffs are full-time carnival

ride operators for the purposes of this exemption and that summary judgment on this question is inappropriate.

## IV.    CONCLUSION

The motions are GRANTED in part and DENIED in part as stated below. The court holds, as a matter of law, that Defendant's Beaverton, Oregon office is *not* the relevant establishment under the FLSA and therefore DENIES Plaintiff's request for summary judgment on that issue. The Court also holds that Defendant's entire enterprise is not the relevant establishment under the FLSA. The Court finds that fact questions remain as to: 1) whether the individual carnivals are the relevant establishments  or rather, if the units constitute the relevant establishments; and 2) whether Plaintiffs were employed "by" an amusement establishment or merely "in" such establishment. As to those questions, as well as the general question of whether Plaintiffs' FLSA claims are barred by the amusement and recreation exemption in 29 U.S.C. § 213(a)(3), both parties' requests for summary judgment is DENIED. With respect to Plaintiffs' state law claims, the Court DENIES Defendant's request for summary judgment on Claims Four (minimum wage), Six (improper failure to reimburse) and Eight (waiting time penalties) on the ground that Defendant has failed to point to any exemption that applies to these claims. The Court GRANTS Plaintiff's request for summary judgment that Defendant was required to pay minimum wage for Plaintiffs' work in California. As to Claim Five (overtime wages), the Court finds, as a matter of law, that under Wage Order 10 full-time carnival ride operators are exempt from California's overtime wage requirements and on that question GRANTS Defendant's request for summary judgment. Nonetheless, the Court DENIES Defendant's request for summary judgment on Claim Five on the ground that genuine issues of material fact remain as to whether these Plaintiffs worked as full-time carnival ride operators. For the same reason, the Court DENIES Plaintiffs'

1    request that judgment be entered in their favor as to Claim Five.

2              **IT IS SO ORDERED.**

3

4    Dated:  October 27, 2014

5                                                        _____

6                                                        JOSEPH C. SPERO
                                                         United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28